1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GERALD GRANT,

11          Plaintiff,                    No. CIV S-05-2473 DFL DAD P

12      vs.

13   RENEE KANAN, et al.,

14          Defendants.                   ORDER

15   _____/

16          Plaintiff is a state prisoner proceeding pro se.  Plaintiff seeks relief under 42

17   U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C.

18   § 1915.  This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C.

19   § 636(b)(1).

20          Plaintiff's in forma pauperis application makes the showing required by 28 U.S.C.

21   § 1915(a).  Plaintiff's request for leave to proceed in forma pauperis will therefore be granted.

22          Plaintiff is required to pay the statutory filing fee of $250.00 for this action.  See

23   28 U.S.C. §§ 1914(a) & 1915(b)(1).  An initial partial filing fee of $42.80 will be assessed by this

24   order.  See 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate

25   agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the

26   Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly payments of twenty

                                             1

1   percent of the preceding month's income credited to plaintiff's prison trust account.  These

2   payments will be forwarded by the agency to the Clerk of the Court each time the amount in

3   plaintiff's trust account exceeds $10.00, until the $250.00 filing fee is paid in full.  See 28 U.S.C.

4   § 1915(b)(2).

5          The court is required to screen complaints brought by prisoners seeking relief

6   against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C.

7   § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

8   claims that are legally "frivolous or malicious," fail to state a claim upon which relief may be

9   granted, or seek monetary relief from a defendant who is immune from such relief.  See 28

10  U.S.C. § 1915A(b)(1) & (2).

11         A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

12  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

13  (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

14  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

15  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

16  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

17  Cir. 1989); Franklin, 745 F.2d at 1227.

18         A complaint, or portion thereof, should be dismissed for failure to state a claim

19  upon which relief may be granted only if it appears beyond doubt that plaintiff can prove no set

20  of facts in support of his claim or claims that would entitle him to relief.  Hishon v. King &

21  Spalding, 467 U.S. 69, 73 (1984); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289,

22  1294 (9th Cir. 1981).  In reviewing a complaint under this standard, the court will accept as true

23  the allegations of the complaint.  See Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738,

24  740 (1976).  In general, the court will also construe the pleading in the light most favorable to the

25  plaintiff and resolve doubts in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421

26  (1969).  Pro se pleadings are held to a less stringent standard than pleadings drafted by lawyers.

2

1    Haines v. Kerner, 404 U.S. 519, 520 (1972).  The court may, however, disregard allegations in

2    the complaint if those allegations are contradicted by facts established by exhibits attached to the

3    complaint.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court need

4    not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of

5    fact.  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

6            Plaintiff commenced the present action by filing a 57-page complaint.  On March

7    31, 2006, plaintiff submitted a 75-page amended complaint and a motion for leave to file his

8    amended complaint.  Under the Federal Rules of Civil Procedure, a party may amend his or her

9    pleading "once as a matter of course at any time before a responsive pleading is served."  Fed. R.

10   Civ. P. 15(a).  An amended complaint filed as a matter of course supersedes the original

11   complaint, and the original pleading no longer serves any function in the case.  See Loux v.

12   Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Because no responsive pleading has been served in this

13   action, plaintiff's motion for leave to file an amended complaint is granted, and the court will

14   screen plaintiff's amended complaint.

15           The Civil Rights Act under which this action was filed provides as follows:

16           Every person who, under color of [state law] . . . subjects, or causes
             to be subjected, any citizen of the United States . . . to the
17           deprivation of any rights, privileges, or immunities secured by the
             Constitution . . . shall be liable to the party injured in an action at
18           law, suit in equity, or other proper proceeding for redress.

19   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

20   actions of each defendant and the deprivation alleged to have been suffered by the plaintiff.  See

21   Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

22   (1976).

23           "A person 'subjects' another to the deprivation of a constitutional right, within the

24   meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

25   omits to perform an act which he is legally required to do that causes the deprivation of which

26   complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Supervisory

3

1   personnel are generally not liable under § 1983 for the actions of their employees under a theory

2   of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the

3   causal link between him and the claimed constitutional violation must be specifically alleged.

4   See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441

5   (9th Cir. 1978).

6           In the captions of his form complaint and an attached typed complaint, plaintiff

7   identifies as defendants four doctors, a physician's assistant, an acting warden, and a warden.

8   Within the typed complaint, plaintiff identifies two additional defendants – a facility captain and

9   an additional doctor.  Plaintiff's claims arose at Mule Creek State Prison, where all defendants

10  were employed at the relevant time.  Plaintiff's claims arise out of a visit to the medical clinic on

11  October 8, 2002, for treatment of wax buildup in his left ear.  He was seen by a physician's

12  assistant (PA) who referred him to a medical technical assistant (MTA) to have his left ear

13  cleaned out.  Plaintiff alleges that the MTA, who treated him in the hallway instead of a

14  treatment room, flushed his ear with cold water instead of hot and negligently damaged his ear by

15  digging too deep with the irrigation tool.

16          Plaintiff does not allege that he has any medical expertise, but he believes that the

17  MTA tore the tympanic membrane in his left ear, causing the ear to bleed and become infected

18  and also causing his hearing to diminish immediately.[1]  In plaintiff's opinion, the MTA's

19  negligent infliction of injury to his ear did not merely cause him to suffer ear pain, swelling, and

20  hearing loss, but also caused him to experience many other medical problems, including

21  headaches, dizziness, insomnia, hot flashes, night sweats, chills, loss of appetite, and boils on his

22  upper body.

23  /////

24

---

25          [1] Plaintiff's allegation that his hearing dissipated after the alleged injury by the MTA is
    contradicted, or at least undercut, by his allegation that he told medical staff upon arrival at the clinic
26  that he was experiencing a significant loss of hearing in his left ear due to ear wax.

1    Plaintiff's allegations, the medical records attached to his amended complaint, and

2 the documents submitted to demonstrate exhaustion of administrative remedies show that the PA

3 saw plaintiff numerous times after October 8, 2002, ordered lab reports, and prescribed

4 medications for plaintiff's various complaints.  The PA's notes on October 18, reflect that

5 plaintiff's left tympanic membrane was intact.  On November 4, 2002, the PA recommended that

6 plaintiff be seen by an ENT specialist.  On November 5, 2002, plaintiff was seen by the chief

7 medical officer, and the referral was approved.  On December 11, 2002, plaintiff was seen by an

8 ENT specialist, who wrote that plaintiff's left tympanic membrane was intact, there was no

9 infection, and his hearing was intact.  On January 10, 2003, plaintiff was seen by another doctor

10 at Mule Creek State Prison, and that doctor noted that plaintiff had a well healed tympanic

11 membrane.

12    On January 27, 2003, plaintiff filed an inmate appeal characterized as a citizen's

13 complaint against the MTA and the PA for misconduct and for violations of state regulations

14 concerning medical treatment of inmates.  Plaintiff asserted that the PA engaged in malpractice

15 when she failed to do her work and put it off onto an inexperienced MTA.  Plaintiff indicated his

16 intention to join a class action lawsuit against the CDCR "for lack of medical attention."  He

17 requested compensation for his pain and suffering.  After the inmate appeal was denied at all

18 levels, plaintiff filed a state tort claim, which was denied as untimely.

19    On the basis of these facts, plaintiff makes broad and conclusory assertions of

20 woefully inadequate medical care in violation of the Eighth Amendment.  Plaintiff cites use of

21 inadequately trained MTA's as gatekeepers to inmates' access to medical care, insufficient

22 qualified medical staff, failure to provide access to care even when a substantial risk of harm is

23 present, lack of training and supervision of medical staff at Mule Creek State Prison, inadequate

24 medical screening of patients seeking emergency treatment, lengthy delays in providing care until

25 inmates' symptoms become life threatening, failure to provide treatment even after a diagnosis is

26 made, untimely response to medical emergencies, interference by correctional staff, failure to

inform patients of potential side effects of prescribed medications, and lack of quality control procedures.  Plaintiff concludes that the defendants in this case "were not competent medical professional and lack sufficient knowledge about medical care to properly monitor, opperate [sic] and/or improve the delivery of Health Care Services to the plaintiff." (Compl., Attach. at 10.) Plaintiff seeks relief under § 1983, the ADA, the Rehabilitation Act, and state personal injury statutes.  (Id., Attach. at 10-13.)  He requests declaratory relief, an order enjoining defendants from subjecting him to unconstitutional or illegal conduct, compensatory damages, punitive damages, appointment of counsel, and attorneys' fees.  (Id., Attach. at 13.)

Six of plaintiff's nine defendants have been sued solely in their supervisory capacity:  Dr. Renee Kanan, CDCR Deputy Director for Health Care Services; Dr. Anita Mitchell, CDCR Chief Medical Officer for Medical and Public Health Programs, Health Care Services Division; Dr. Brett Williams, Mule Creek State Prison Health Care Manager; Mike Knowles, Warden of Mule Creek State Prison; Roseanne Campbell, Acting Warden of Mule Creek State Prison; and J. Arthur, Facility C Captain.  These supervisorial personnel cannot be held liable under § 1983 for the actions of their employees under a theory of respondeat superior. Plaintiff's conclusory allegations of failure to supervise and train staff and failure to establish procedures to protect inmates are not specific enough to provide a causal link between these six defendants and the violations of federal law alleged by plaintiff.  Plaintiff's vague and conclusory allegations concerning these six defendants fail to state a claim upon which relief can be granted. In the absence of specific allegations linking the supervisory defendants to the alleged civil rights violations, plaintiff's claims are both factually and legally frivolous.  All claims against defendants Kanan, Mitchell, Williams, Knowles, Campbell, and Arthur must be dismissed.

Although defendants Dr. Christopher J. Smith and Dr. McIntyre had some involvement with plaintiff's medical care, plaintiff's allegations against these two defendants are also legally and factually frivolous and fail to state a claim upon which relief can be granted. Plaintiff alleges that Dr. Smith, Chief Medical Officer at Mule Creek State Prison, saw plaintiff

the next day after P.A. Todd recommended referral to a specialist; he ordered lab tests to

determine the cause of plaintiff's body boils and resistant ear infection and approved referral to a

specialist.  The lab tests were performed a week later, and P.A. Todd reviewed the results with

plaintiff eight days after the tests.  Plaintiff was seen by a specialist just three weeks later.  These

allegations do not demonstrate that Dr. Smith violated plaintiff's right to adequate medical care.

Similarly, plaintiff's single allegation against Dr. McIntyre is that on January 10, 2003, this

physician wrote in a report that plaintiff had a well healed tympanic membrane in his left ear.

This allegation fails to demonstrate that Dr. McIntyre violated plaintiff's right to adequate

medical care.  Plaintiff's claims against defendants Smith and McIntyre must be dismissed.

          The remaining defendant is K. Todd, the physician's assistant who saw plaintiff

on October 8, 2002.  Plaintiff's complaint against defendant Todd is that she should have

irrigated plaintiff's left ear herself instead of having the MTA do it.  Plaintiff's allegations fail to

demonstrate that defendant Todd acted with deliberate indifference when she referred plaintiff to

the MTA to have his ear cleaned out.

          To state a claim of cruel and unusual punishment under the Eighth Amendment, a

prisoner must allege facts showing that objectively he suffered a sufficiently serious deprivation

of his rights and that subjectively each defendant had a culpable state of mind when he or she

caused or allowed the serious deprivation of rights to occur.  Farmer v. Brennan, 511 U.S. 825,

834 (1994); Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).  Neither accident nor negligence

constitutes cruel and unusual punishment.  Whitley v. Albers, 475 U.S. 312, 319 (1986).

          When a prisoner alleges that prison staff denied medical care or provided

constitutionally inadequate medical care, he must allege "acts or omissions sufficiently harmful

to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97,

106 (1976).  A claim of constitutionally inadequate medical care has two elements:  "the

seriousness of the prisoner's medical need and the nature of the defendant's response to that

need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992).  A medical need is serious "if

1    the failure to treat the prisoner's condition could result in further significant injury or the

2    'unnecessary and wanton infliction of pain.'" 974 F.2d at 1059 (quoting Estelle, 429 U.S. at

3    104). Indications of a serious medical need include "the presence of a medical condition that

4    significantly affects an individual's daily activities." Id. at 1059-60. The prisoner must allege

5    facts demonstrating that each defendant responded to his serious medical need with deliberate

6    indifference. Allegations demonstrating deliberate indifference are required to satisfy the

7    subjective prong of the two-part test applicable to all Eighth Amendment claims. Farmer, 511

8    U.S. at 834.

9        Before it can be said that a prisoner's civil rights have been abridged with regard

10   to medical or mental health care, "the indifference to his medical needs must be substantial.

11   Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

12   Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at

13   105-06). Deliberate indifference is "a state of mind more blameworthy than negligence" and

14   "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer,

15   511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Mere differences of

16   opinion between a prisoner and prison medical staff as to proper medical or mental health care do

17   not give rise to a § 1983 claim. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin

18   v. Oregon, 662 F.2d 1337, 1334 (9th Cir. 1981).

19       Plaintiff has alleged that defendant Todd was negligent or engaged in malpractice

20   when she referred him to an inexperienced MTA to have his left ear irrigated. Plaintiff's

21   allegations of negligence and malpractice, or, at most, mere indifference, fail to state a claim of

22   inadequate medical care under the Eighth Amendment. Plaintiff's claims against defendant Todd

23   must be dismissed for failure to state a claim upon which relief can be granted.

24       Although plaintiff has cited the ADA and Rehabilitation Act, he has not alleged

25   facts showing that he was a disabled person for purposes of either statute when he sought

26   medical care on October 8, 2002, or that he became a disabled person for purposes of either

statute as a result of the medical care he received or any that he did not receive.  Moreover, he

has failed to allege or show that he sought reasonable accommodation under the ADA or the

Rehabilitation Act and exhausted administrative remedies on such a request.

Plaintiff's amended complaint must be dismissed because it fails to state any

claim against any defendant.  While it does not appear that plaintiff can cure the defects of any of

his claims, the court will dismiss the first amended complaint with leave to file a second

amended complaint.

If plaintiff files a second amended complaint, he must sue only those defendants,

if there are any, that can be linked to a federal constitutional or statutory violation.  He must

allege facts showing that each of the named defendants caused a sufficiently serious deprivation

of his right to receive adequate medical care and that each defendant acted with the requisite

deliberate indifference.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  There can be no

liability under 42 U.S.C. § 1983 unless there is an affirmative link or connection between the

defendant's conduct and the claimed deprivation.  See Rizzo v. Goode, 423 U.S. 362 (1976);

May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th

Cir. 1978).  Vague and conclusory allegations of official participation in civil rights violations

will not suffice.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff's second amended complaint must be complete in itself without reference

to his prior pleadings.  See Local Rule 15-220.  The second amended complaint will supersede

all prior pleadings.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  In the second amended

complaint, as if it were the first complaint filed in this action, plaintiff must allege each claim

and the involvement of each defendant in accordance with this order.

Plaintiff must submit his second amended complaint on a § 1983 complaint form.

All defendants sued in the second amended complaint must be listed in the caption on the first

page and in the section of the form where the defendants' names and addresses are to be

provided.  Defendants named only in attachments to the form complaint will be disregarded.

Several other matters are before the court.  Plaintiff has filed two motions for appointment of counsel.  The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  In the present case, the court does not find that exceptional circumstances are present.  Plaintiff's motions for appointment of counsel will therefore be denied.

Plaintiff has filed a motion for service of process by the United States Marshal and has submitted various documents for service on defendants.  In light of the dismissal of plaintiff's first amended complaint, all copies of that pleading have been discarded.  All documents that purport to be  a summons or a request for waiver of service of summons have also been discarded.  The court will screen plaintiff's second amended complaint and determine whether it states claims against any defendants.  If the pleading states cognizable claims, the court will provide plaintiff with all necessary forms and instruct him in the proper completion of the documents required for service by the United States Marshal.  Plaintiff's motion for such service will be denied as unnecessary.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's December 7, 2005 application to proceed in forma pauperis (docketed as #2) is granted.

2.  Plaintiff is obligated to pay the statutory filing fee of $250.00 for this action.  Plaintiff is assessed an initial partial filing fee of $42.80.  All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3.  Plaintiff's March 21, 2006 motion for appointment of counsel (docketed as #5) is denied.

4.  Plaintiff's March 21, 2006 motion for leave to file an amended complaint (docketed as #6) is granted and the court has screened the amended complaint filed March 21, 2006 (docketed as #7).

5.  All documents submitted by plaintiff on August 3, 2006 (docketed as #8) and October 23, 2006 (docketed as #9) have been discarded.

6.  Plaintiff's October 23, 2006 motion for service of process by the United States Marshal (docketed as #10) is denied.

7.  Plaintiff's October 23, 2006 motion for appointment of counsel or court ordered arbitration (docketed as #11) is denied.

8.  Plaintiff's first amended complaint is dismissed with leave to amend.

9.  Plaintiff is granted thirty days from the date of service of this order to file a second amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and this order; plaintiff's second amended complaint must bear the case number assigned to this case and must be labeled "Second Amended Complaint"; failure to file a second amended complaint in accordance with this order will result in a recommendation that this action be dismissed without prejudice.

DATED: November 13, 2006.

_Dale A. Drozd_
_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:13
gran2473.14

11